The third and final case this morning is 23-6890, 23-6950 Moreno v. Bosholm. Mr. Whalen. Good morning, Your Honors. May it please the Court, my name is James Whalen, my colleagues Sam Bourbon IV and Colin Saint here on behalf of Mr. Moreno. The trial court erred in this case in two ways. First, it applied state law to limit the testimony of Mr. Moreno's Dr. Bill Brett. Federal law, not state law, governs the admissibility of expert testimony in federal court. The trial court's application of state law was error. Second, compounding on that error, the trial court took the case from the jury and held that the evidence that it did admit was insufficient to support Mr. Moreno's claims of deliberate indifference and medical negligence. That again was error. The trial court should have sent the case to the jury because there was sufficient evidence below to create jury questions on both of Mr. Moreno's claims. The evidence below showed that Mr. Moreno narrowly escaped death and survived with lasting injuries because for three days the H1N1 slime flu was allowed to slowly suffocate him, smothering his lungs and preventing them from absorbing the oxygen necessary to feed his brain. His condition was allowed to deteriorate so dramatically because his only treating physician, Dr. Carol Balsham, did not provide any monitoring instructions in her treatment plan to the nursing staff. That simple but critical omission meant that from Friday to Monday no one listened to his lungs, no one counted his breathing, no one measured his blood oxygen content, and as a consequence he nearly died. I'm fairly sure the panel is familiar with the factual background here, but among other issues this case raises a very interesting almost law review bar exam type question on the application of procedural and substantive provisions. So why don't we go directly to why you say the district court erred in applying the North Carolina rule? Yes, Your Honor. So under Shady Grove there's a two-step analysis. And the first step, and this court's decision, recent decision and pleasure, outlines these steps very well. In the first step we do not look at state law. We look at federal law to see if there's a federal procedural rule on point. And if there is, and it applies and it answers the question in dispute, then the only remaining questions are whether that law is constitutional and consistent with the Rules Enabling Act. And here there is a federal rule on point. Federal Rule 702 governs the admission of expert testimony in federal court. It uses the same language that was in Civil Rule 23 regarding class actions that the Supreme Court addressed in Shady Grove. It uses the word may, meaning that... So we have to look at the substance of what a party is required to prove for in order to prove the elements of its cause of action. And this is where I think the case is a little confusing and isn't quite the same as Shady Grove or Pleasure. Pleasure, for instance, you had a certificate requirement, but it didn't affect the proof of the elements of the cause of action. The same thing in Shady Grove. Justice Ginsburg's dissenting words said it limited the remedy, but it didn't affect the proof of the elements of the cause of action. Here this seems a little bit different. It's not a filing fee. It's not a certificate that's not admissible at trial. It's not an element of the damages you can recover. But it seems to take on some substantive characteristics in that you can't prove the elements of the cause of action for medical malpractice unless you have qualified expert testimony, except in very rare circumstances. So that seems to introduce an element here that's not present in Pleasure or Shady Grove. Your Honor, I think I'd slightly disagree. Well, I would agree that we have to look at state substantive law to find the elements of Mr. Moreno's second claim, the medical negligence claim. But there is nothing in the state statute governing that that requires expert testimony at all, let alone expert testimony that meets certain procedural thresholds. There is case law in North Carolina that says, generally speaking, to prove medical negligence you need to have expert testimony. But we have expert testimony here. The question is whether this separate rule, which is contained in the state rules of evidence, places a hurdle that we must observe in federal court. So is it your bottom line view that the North Carolina requirement, and you're right, it's not in the statute, it's in a rule unlike the Virginia case, that that is purely a procedural rule and there's no substantive part to it? So, Your Honor, I'd take two steps. I'd first, to avoid your question, briefly and then to answer it. And the first step, I'd say the question before the court is whether Dr. Bilbrow's testimony was properly excluded. That is a question that is answered by federal Rule 702. And so the court does not even need to reach the question about substance versus procedure to answer that question. We can talk about the sufficiency of the evidence to support the second claim, but on the procedural question of whether or not Dr. Bilbrow's testimony should have been admitted, that question is answered by Rule 702. If the court were to reach the second step and say, now let's look, as the court did in Creekmore, at whether the Rule 702 is procedural or substantive, then yes, Your Honor, I would argue that Rule 702 is quite clearly a procedural, not substantive, rule. So, Your Argument, I take it, is if it's a procedural rule, even if it is in reality substantive, that that's all you need to look at? So, in the first step, looking at the federal rule, we look at whether there's a federal procedural rule on point. We all understand the issues. When you look at Pledger and Shady Grove, you can see how these apply, but as my earlier questions indicated, it seems like to me this is a little bit different. Not to say that you're not correct, but that this involves a different element than was involved in those two cases. So, on the question of whether Rule 702 is procedural or substantive, there are a couple of additional points that might clarify that for the court. For example, Rule 702, the State Rule 702 is contained in the Rules of Evidence, which by their own terms only apply in state court. It's contained in Rule 101 and 1101 of the North Carolina Rules of Evidence. So, if the North Carolina legislature was attempting to create a substantive rule that was going to apply beyond North Carolina courts, it could have done so, and it didn't. And that's in stark contrast to the Virginia statute, which by its own terms did apply to any claim for medical negligence that arose in Virginia. So, that is another distinguishing factor here. And I should say that the parties are in agreement that North Carolina law and Virginia law are materially different and should be applied differently. So, can I follow up on Judge Agee's questions? Because this is a little bit murky. We've got the Creekmore decision, which I want you to opine upon here in a second. But let me give you an extreme example. If Congress had in some way, shape, or form inserted a rule that said if a doctor is sued in federal court, strict liability applies, right? There's no test of negligence. That's a rule that would seem to supplant the state rule. But clearly I think that that rule would not be enforceable because it affects the elements of the cause of action, I don't think. Do you agree with that? Your Honor, it would, so that under the first step analysis in Shady Grove, there would be a federal rule on point. So, this next question would be is that rule consistent with the rules enabling it?  Sounds to me in the hypothetical that the answer would be no. Right. That's what I think. But at least at first blush, this rule is a little bit different because it doesn't really affect, well, there may be a disagreement as to whether it affects the cause of action. But it principally affects the manner in which the litigant can prove the elements of the offense. In North Carolina, if you're in state court, you've got to get a doctor that satisfies the requirements of an expert for that particular cause of action, whereas in federal court, all you need to do is satisfy Daubert and the federal rule. Now, admittedly, that results sometimes in different, there may be different results in federal court and state court because of that. But that's essentially what Shady Grove predicted and suggested, that there was nothing wrong with that. If Congress has spoken on a matter that is, has nothing to do with the, that is a matter that is not inconsistent or beyond the scope of Congress's ability to act, then that's the end of the story. And I guess from your position, this is exactly that kind of rule that Congress has indicated, at least when it comes to experts in federal court. There is no distinction between the causes of action. The rule applies consistently across the board. And it's either a fortunate or an unfortunate accident if you happen to land in federal court or state court, but that's the way the rules apply. That's correct, Your Honor. And the analysis that pleasure walks through is to look at the federal rule and see, does the state rule conflict with that? Does the state rule do something different? And here, there's no question. The federal rule is categorical, uses the same language that was used in, that's used in Rule 23, addressed in Shady Grove. It does, it's a categorical rule of permission. It allows a witness who meets the qualifications of Rule 702, Federal Rule 702, to offer expert testimony. Those qualifications are disjunctive. You can have education or training or experience. That is, it contradicts the state rule, which requires specific training, specific experience, specific recent experience. And so because there's a federal rule on point, it applies categorically. It does apply to this case. It answers the question in dispute. The only other question for this court is whether or not Federal Rule 702 is consistent with the Rules Enabling Act and is constitutional. There's been no argument anywhere in this case or anywhere in the country, to my knowledge, in the cases that I've read, that Rule 702 is unconstitutional or beyond the rule. So how do you reconcile our Creekmore decision? Your Honor, Creekmore skipped the first step of Shady Grove. So to the extent that this court looks at the first step of Shady Grove, in this case, Creekmore does not inform the court's decision. To the extent that the court reaches the second question, after looking at the federal statute, decides to look at North Carolina law to see if it is procedural or substantive, applying Creekmore would get you a different result in this case. And I've addressed a couple of the reasons. One is that by its own terms, North Carolina law only applies in state courts, whereas the Virginia statute applies in whatever case arises in Virginia. The Virginia statute at issue was the standard of care statute. The statute set out the standard of care and then continued and said, in order to meet the standard of care, you need an expert, and this is what the expert has to be able to, you know, the qualifications of the expert. So structurally, the legislature was trying to say that this is a substantive rule. North Carolina has done that very differently. The state, the equivalent state law in North Carolina does not have any of those requirements. It's a separate rule. But in the first instance, you would say that the Creekmore decision just doesn't account for Shady Grove for the first sentence. That's right, Your Honor. It does not cite Shady Grove. It does not follow the Shady Grove analysis, and so Shady Grove is controlling. We'd ask the court to just follow Shady Grove as the court did in Pledger. And I'll note just to tie back to Pledger a little bit, Pledger dealt with, it was a West Virginia rule, but it was a very similar thing. It's the credentialing statute, Rule 9J, which has come up in this case in the cross-appeal, is the partner rule. So in North Carolina, there's a rule, Civil Procedure 9J, which is about having the same medical negligence expert opine in the first instance that the cause of action should proceed. It was adopted in the same session law as Rule 702B. It was adopted for the same purpose. And, Your Honor, my time has expired. Thank you very much, Mr. Whalen. Ms. Wood? May it please the court? My name is Maria Wood, and I am here on behalf of Dr. Carol Bolsham, who was originally one of almost 20 defendants in this case that was filed more than four years ago. And I'm here on behalf of Dr. Carol Bolsham, notwithstanding that there was not an expert critical of Dr. Bolsham prior to the filing of the lawsuit, at any point during the pendency of the lawsuit, or the case continued on to trial. And at trial, the third time was the charm, and the district court correctly and properly granted our motion, Dr. Bolsham's motion, for judgment as a matter of law. Why don't we go kind of to the $64 question here now, and that's why doesn't Shady Grove require that we vacate here? Because there's, as the opposing counsel argues, there's a federal procedural rule that would seem to apply here. Why isn't this just a step one Shady Grove examination? Yes, Your Honor. In this case, actually, North Carolina rule of evidence 702 is very different than the federal rule. It requires and imposes heightened requirements for an expert witness to qualify as an expert at trial. And because of those requirements, under North Carolina rule 702, it is inextricably intertwined with the elements and the statutory requirements that need to be shown in order to prevail on a claim of negligence, which is defined under North Carolina general statute 90-21.12. Well, the same was true in Shady Grove in a different context. It was a class action dispute with two different requirements for certifying a class action, one arising under New York, one under the federal rules, and you could make the same argument that that requirement in New York was inextricably intertwined with the ability of a plaintiff to bring a class action, and the Supreme Court had no trouble suggesting that if the rule simply affects the manner in which the plaintiff is able to bring the claim or present the evidence but doesn't affect the cause, the elements of the claim, in this case, in your case, negligence, that that's not substantive. It's procedural. In this case, though, Your Honor, it does affect the elements of the claim. Well, the elements of the claim are still, it's a negligence claim. That hasn't changed. The only thing that changes is who can testify as to the standard of care. I mean, that strikes me as not affecting the elements, just the manner in which evidence is presented. I would argue that it is necessarily tied to it being tied to who can testify as to the elements of the claim in this case when there is only one expert who testifies that he's not critical of this particular defendant. It does not, it's a different scenario in this case as in Shady Grove. This case is much more aligned with the Creekmore case, which was also. Well, I agree with you, but the question is whether or not Creekmore survives in light of Shady Grove. You know, if Creekmore applies, then you win, I think. But if we have to apply Shady Grove, and the last time I checked, we still are the inferior court here, and Shady Grove is a Supreme Court decision. We have to wrestle with that. You have to wrestle with that. So you need to tell us why Shady Grove doesn't apply in this case. Shady Grove was a very different scenario. And in that situation, as Your Honor stated, it was a class action. And I continue to maintain that it does. In this case, the situation is that it does squarely affect the elements of what the plaintiff has to prove. Explain to me how it does. Yes, Your Honor. Go ahead. 90-21.12 lays out the requirements of a medical malpractice claim. And the first requirement is that there needs to be expert testimony in order to show and establish that the defendant provider violated the standard of care. And that expert also has to establish what the standard of care is. The way that the case law... What it seems like to me is that in Shady Grove, Bludger, and in this case, the claim of to prove the duty of care, the standard of care, what one has to prove has not changed depending on who the witness is. So in Shady Grove, for instance, it's a class action case. And the limitation there from the state court was not on what is the element of the class of action. It was what's the degree of recovery. And here, it would seem like that whether or not it's the requirement of the physician expert or a federal rule on the Daubert expert, the elements of what have to be proven has not changed. Yes, Your Honor. The elements, we've already discussed the elements. But it still goes back to how Rule 702 has been applied. And in interpreting Rule 702 in North Carolina, it has been applied in a substantive manner similar to the analysis in Rule 9J. Justice Ginsburg would agree with you, and so would Judge Quattlebaum and Bludger, but they were on the short side. I understand. I'm not saying that either one of those was wrong, but they're still on the short side. And with respect to the dissent by Judge Quattlebaum, it was the dissent, but I do think he made some comments which are instructive here. And he noted, and it was his opinion, he discussed in Bludger that a pre-suit certificate of merit, which was the issue in the Bludger case, which imposed a 30-day requirement, is something that's not addressed in laying out what is required in a pleading. That type of rule is something that is procedural. You have to have this requirement 30 days ahead of time. And that situation in Bludger is different than what we have here. And just to give an example as to how that compares to Rule 9J, which is the pre-filing expert certification requirement in North Carolina, Rule 9J is not a pre-suit service of a certificate of merit like we had in the Bludger case. Rule 9J, it's a mandatory requirement, and it has become a substantive rule in that it affects the merits of the claim because if it is shown through discovery and through depositions that a plaintiff has not complied with Rule 9J and does not have an expert who is qualified, that goes straight to the merits, and that's a substantive issue. So Bludger was a very different situation than we even have in this case. And Creekmore, in looking at the Virginia rule, it seems to be substantive, whereas here the North Carolina rule seems to be somewhat as, I guess, a gatekeeping as to who the expert, the years of practice as to the expert. It actually seems a little more procedural than substantive. I'm curious to hear your response regarding the difference between the Virginia rule and the North Carolina rule. Sure. Yes, Your Honor. And also because it seems as if the Virginia rule gets into the substance. It's about substance. It's about qualifications. Here, if we even look at the legislative intent, it's about procedurally reducing the number of frivolous lawsuits, medical malpractice suits, which seems to be procedural. Actually, Your Honor, I would argue that it is more of a substantive rule, and I will explain why. Rule 702B of the North Carolina Rules of Evidence requires that, as we've discussed, during the year immediately preceding the date of the occurrence that is the basis for the action, the expert witness must have devoted a majority of his or her professional time to, A, the active clinical practice of the same health profession. Now, how that is defined, what is how professional time is defined, and how active clinical practice is defined has been the subject of multiple, probably dozens of court decisions in terms of trying to define this rule, and it has been applied substantively. We've cited several of those decisions in our briefing, including more versus proper, and in that case, it was addressing the issue of what is clinical, what does an expert have to do in order to qualify as having had the requisite amount of clinical time, and the courts have concluded in North Carolina that that has to be treating patients, not administrative time. But if we were in a Shady Grove world, which we are, for better or worse, that would seem like to be a step two question, not a step one question. It seems like to me that after decades of trying to separate procedural and substantive items, after Erie Railroad, the Supreme Court reached the position in Shady Grove that just said, this is a constant morass, we're just going to have a clear rule for better or worse, and so here's the clear rule. The Supreme Court did make that determination in the Shady Grove case, but there are a lot more issues and factors involved in this particular situation involving the testimony of this expert. In this case, even if the expert had been allowed to testify, he was not critical of our physician. When we had deposed him initially in the case, he was critical of other providers, but he was not critical of our physician. So to the extent there was any error in applying North Carolina Rule 702, it was a harmless error, even if we were to apply Shady Grove. Do you have anything else, Ms. Wood? I would just, in conclusion, Your Honor, yes, if I may, in conclusion, I would just again request that this court affirm the granting of the judgment as a matter of law. As I mentioned a minute ago, it's not just a situation of whether or not Dr. Bilbrow, of Dr. Bilbrow and whether his qualifications should have been addressed by federal or state rule, even if he had been admitted to allow to testify, he would not have criticized Dr. Bolsham. There are many other elements of the claim which have, we've not gone into detail, but there are other elements of the negligence claim which the plaintiff at trial still failed to present evidence as to. And in addition, with respect to our cross appeal, one of our bases, Rule 9J, we again would submit that the pleasure case does not apply here. And in this situation, Rule 9J, as there's no federal counterpart with the prefiling certification requirement, we would request that the denials of our 12V6 motions and our summary judge motions be reversed. Thank you. Thank you, Ms. Wood. Mr. Whalen? Your Honors, if I may, I'll pick up close to where the opposing counsel left off, and that's with the harmfulness of the error. I think we've discussed that Dr. Bilbrow's testimony should have come in under the federal rules, and it absolutely was harmful to keep it out, both to his state law claim and to his federal law claim, which is one of the reasons why Shady Grove, I think, cuts this clear line, is in a case like this where we have a federal claim and a state claim, it becomes that much more complicated. Your expert, if that's the same expert you're going to use, is still going to have to meet Dahlberg-related qualifications in order to be permitted to testify. Correct, Your Honor. It's not a free pass. He still has to meet those qualifications. We've argued in the brief both because the issue's been waived and because even if it hadn't been substantively, he will meet those qualifications. We feel confident either if the court were to just reverse or to vacate that decision on the expert testimony, we'll be able to get his testimony admitted. And if it had been admitted, it absolutely would have affected the outcome. The trial court specifically pointed to a lack of expert testimony adjudicating both the deliberate indifference claim and the medical negligence claim. Looking at the deliberate indifference claim, the court specifically said that the lack of expert testimony, that the care provided by Dr. Balsham was so grossly incompetent that any reasonable juror could find that it rose to the level of deliberate indifference. That's at JA 520 and 521. And the judge also pointed to the causation issue, arguing that there was not sufficient causation evidence, something that Dr. Bilbrow specifically tried to testify about but was excluded. And especially when we're talking about deliberate indifference, there's no question that the federal rule should have applied. And Dr. Bilbrow's testimony relating to deliberate indifference and causation absolutely should have come in. He also should have been permitted to testify, as he did on the court here, that the lack of instruction was a breach of the standard of care. He specifically testified to that. We've gone back and forth in the briefing on that issue, but the quote is explicit that while he did not object to the specific things that happened that he was asked about in that question, he did object to the lack of instruction, and it was the lack of instruction that caused his injuries. There is testimony from Dr. Bilbrow that nurses would not have tested or would not have checked, would not have monitored Mr. Moreno, but for instruction, that the quarantine procedure was not, did not include any such instruction. The only place that this instruction could have come from was Dr. Balsham. Dr. Balsham failed to produce that instruction. And so that evidence is sufficient to show the medical negligence side and the fact that Dr. Balsham knew that he was suffering from flu-like symptoms and that quarantine him along with other confirmed cases of the flu showed that she did subjectively know that he had a serious medical condition and was at a substantial risk of serious harm if his condition was not properly monitored. She knew that providing that monitoring instruction would work. If we send it back because there's a Shady Grove violation in the first instance, why would we look at any of this stuff? The court does not need to only, I only raise it because opposing counsel has raised harmlessness of the error, and we think, we're quite confident that the error was not harmless, that there was substantial evidence, as we've argued, substantial evidence beforehand, but certainly with Dr. Bilbrow's testimony to give this case to the jury. Can I ask you about the cross-appeal, which is a little, is part of this case? And your colleague on the other side would have us go back to the very beginning and look at the pleadings and decide that if they were defective from the get-go that that in itself is sufficient to affirm the district court decision. That seems a little odd, but on the other hand, I mean, we have a Rule 12b-6 for a reason, right? So what's wrong with that? A Dupree is what's wrong with that, Your Honor. The Supreme Court held in Dupree that we don't go back to the beginning. We don't discuss factual disputes that go back. Opposing counsel can raise all these same arguments just in the context of what evidence came in a trial, which we have debated in the lead appeal. And so all of the debate on the substantiality of the evidence in the cross-appeal is not properly before the court. Is there a distinction between factual and legal issues when it comes to going, even considering whether or not to go back? Yes, Your Honor. Purely legal issues that it would be a waste of time to try to raise again because they are categorically resolved no matter what the facts could be. Those purely legal issues can be raised again. On my read of the cross-appeal, the only one that could fall in that category is the Rule 9j motion that is purely just whether or not at the pleading stage that rule is complied with. But as Pledger, I think, quite clearly shows, the Rule 9j, North Carolina's Rule 9j would not apply in federal court, which is what the lower court found. And so that issue can be easily dispensed with. The other ones are all wrapped up in the facts. Certainly the sufficiency of the evidence arguments are wrapped up in the facts. Qualified immunity. The only part of qualified immunity that's ever been an issue in this case is the substantiality of the evidence. So again, wrapped up in the facts. The exhaustion of remedies and the statute of limitations issues are wrapped up in when Mr. Moreno was conscious enough of his injury to raise things and whether or not, as a factual matter, he had the opportunity to exhaust any sort of administrative remedies. So all of these things, digging back deep into the record, are tied up in facts that bring it outside of this court's jurisdiction. Certainly if the court breached any of those, we've got arguments in the briefing and we can stand on the briefing as to why the court was right to deny the motion to dismiss and deny summary judgment. But we think the proper issues before the court all came in at trial. Thank you, Mr. Whalen. Thank you, Your Honors. Ms. Wood, you reserved some time on your cross appeal, so if you want to come up and say a few words about that. Or not. I will. Thank you. To revisit the issue of Rule 9J, which Mr. Whalen acknowledged is a legal issue, the complaint in this case, by all accounts, does not include a Rule 9J certification. However, in North Carolina, even despite Pledger, because of the manner in which Rule 9J is applied and interpreted as a substantive rule, we do not believe that Pledger guides the analysis here. I touched on that in my initial argument, but just to revisit and wrap up the argument, Rule 9J in North Carolina is a pre-filing expert witness certification requirement that requires the plaintiff to obtain an expert witness prior to the filing of a lawsuit who is one, reasonably expected to qualify, and two, who has reviewed all the records and is expected to testify that the defendant breached the applicable standard of care. And in this case, the complaint squarely alleged medical negligence. It involved squarely the care of not just Dr. Balsham, but multiple other defendants, nurses, other providers in the case. The complaint, though, as Mr. Whalen explained, an alleged failure by various providers to monitor Mr. Moreno over a three-day period. It, therefore, was a medical negligence claim subject to the North Carolina substantive law. Rule 9J, and we have briefed these issues at length in our brief, but Rule 9J, though it is a North Carolina rule of civil procedure, it has been applied over the years as a substantive rule. And, for example, in this case, there's no question that Dr. Balsham was a physician and plaintiff alleges she had that duty to ensure and provide proper medical care to her patients. And going further, under North Carolina law, a plaintiff who's attempting to allege a medical malpractice claim has to include this assertion. And if it's not included in the complaint, the complaint is dismissed. And it's not in the complaint, and for that reason, that is an illegal issue. And the reason it's been used, the reason, one of the reasons behind the intent and the use and application of Rule 9J involves the fact that discovery, as discovery is done in a case, if discovery reveals that a complaint may facially comply with Rule 9J, but in reality does not, that prompts a Rule 9J motion to dismiss, which is squarely a substantive issue involving whether or not this expert qualified, whether or not this expert was willing to testify that the standard of care was breached, and so forth. So Rule 9J should have been included in the complaint in this case, and the case, the complaint should have been dismissed at the very beginning at the Rule 12B6 stage over four years ago before we got to trial, at which point Dr. Bilbray still did not have any specific testimony specifically as to Dr. Bolsham. So for these reasons, we request, respectfully request, that the denial of the Rule 12B6 motion, that that be reversed, and we further request that the dismissal and the granting of the judgment as a matter of law be upheld. Thank you. Thank you, Ms. Wood. Welcome down and greet counsel. We thank you for your arguments and adjourn court for the week. This honorable court stands adjourned, sign and die. God save the United States and His Honor.
judges: Albert Diaz, G. Steven Agee, DeAndrea Gist Benjamin